IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DR. IRFAN ANSARI and HINA NAZ, | ) | |
| | ) | |
| Plaintiffs, | ) | 8:07CV160 |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, F. Gerard Heinauer, Director of Nebraska Service Center, UNITED STATES ATTORNEY GENERAL, Alberto Gonzales, and UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, Emilio Gonzalez, Director, | ) ) ) ) ) ) ) ) ) | MEMORANDUM AND ORDER |
| | ) | |
| Defendants. | ) | |

This matter is before the court on defendants' motion to dismiss, Filing No. 10, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Plaintiffs filed this action for declaratory relief in the nature of mandamus, 28 U.S.C. § 1361, and pursuant to the Administrative Procedures Act, 5 U.S.C. § 701 *et seq.*, to compel the defendants to take action on the pending applications for adjustment of status to lawful permanent residence. Filing No. 1. Plaintiffs argue the defendants have unlawfully withheld action on their applications. Plaintiffs contend that this court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question); 8 U.S.C. § 1101 *et seq.* (Immigration and Nationality Act "INA"); and 28 U.S.C. § 1361 (mandamus statute). The defendants argue this court is without jurisdiction to decide this case.

**Subject Matter Jurisdiction**

"Because jurisdiction is a threshold issue for the court, the district court has 'broader power to decide its own right to hear the case than it has when the merits of the case are

reached.'" *Bellecourt v. United States*, 994 F.2d 427, 430 (8th Cir. 1993), citing *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990).  For the court to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the complaint must be successfully challenged either on its face or on the factual truthfulness of its averments. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir.1993).  In a facial challenge to jurisdiction, all of the factual allegations regarding jurisdiction would be presumed true and the motion could succeed only if the plaintiff had failed to allege an element necessary for subject matter jurisdiction.  *Id.*  In a factual attack on the jurisdictional allegations of the complaint, however, the court can consider competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute.  *Id.*  Because the parties have submitted evidence in support of their respective positions, this case presents both a facial and a factual jurisdictional challenge.  In such a challenge, this court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."  *Osborn v. United States*, 918 F.2d at 730.  "In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the court from evaluating for itself the merits of jurisdictional claims."  *Id.*  The plaintiff has the burden of proving that jurisdiction does in fact exist.  *Id.*

### **Background**

Plaintiff Dr. Irfan Ansari is a native and citizen of Pakistan.  He currently resides in Mount Vernon, Illinois, where he works as an ophthalmologist with the Marion Eye Centers.  He has been so employed since July 2003.  He has applied for permanent resident status based on an approved immigrant visa petition filed by his employer.  Plaintiff Hina Naz is also a native and citizen of Pakistan and resides with her husband, Dr. Ansari, in Illinois.

She stays at home and cares for the couple's son who was born in the United States in 2003. She is applying for permanent resident status as part of her husband's application.

Dr. Ansari entered the United States in October of 1999 on an H-1B non-immigrant visa for specialty workers. This classification is granted to a non-citizen who performs special occupations with baccalaureate or higher degrees. He first worked at St. Vincent Hospital as a resident; he then received an extension of his status through Tenet Health System's Medical College in Pennsylvania from June 2000 until June 2003, where he served his final year as Chief Resident of Ophthalmology. Thereafter, he received a further extension with the Marion Eye Centers and still works there as of this date.

On September 2, 2003, the Marion Eye Centers filed a labor certification with the Department of Labor on behalf of Dr. Ansari. Such an application must be filed for Dr. Ansari to attain permanent residence based on his employment. The Department of Labor certified Dr. Ansari's application on October 15, 2005. The Marion Eye Centers then filed a petition for alien worker with the USCIS Nebraska Service Center on December 8, 2005. On January 21, 2006, this petition was approved. Dr. Ansari also filed his application for adjustment to permanent resident status concurrently with his employer's petition on December 8, 2005. Ms. Naz filed her request for permanent resident status with USCIS Nebraska Service Center on December 8, 2005.

In February of 2006, USCIS erroneously told the plaintiffs that their applications were pending apparently because visa numbers were not available. In November of 2006, plaintiffs were told their applications were undergoing the FBI namecheck process and there was no estimate on the time such check would be completed. In February of 2007, plaintiffs' congressional representative inquired and received the same response. On

February 23, 2007, counsel for the plaintiffs wrote to the Nebraska Service Center and received a letter that the application was still pending, and if a response was not received in six months, the applicants should contact the center again. Counsel contacted the service center again in March of 2007, but as of this date the applications are still pending.

### Discussion

The plaintiffs are incurring extra expenses each year as they are required to reapply for their current status. Also, Dr. Ansari is unable to apply for numerous grants as he is not a permanent resident. Plaintiffs argue that they have a right to obtain mandamus relief pursuant to 28 U.S.C. § 1361 to require defendants to perform their statutory duty to process their claims. *See* 8 C.F.R. § 245.2(a)(5). Plaintiffs also allege that the defendants' failure to process their applications violates the Administrative Procedures Act (APA), as the actions are arbitrary and capricious. Plaintiffs also request attorney's fees and costs under the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412.

The government argues there is no jurisdiction to consider plaintiffs' claims pursuant to 8 U.S.C. § 1252(a)(2)(B), as Congress has excepted discretionary decisions regarding any changes of status of aliens from any judicial review. The government contends that because there is no clear duty to adjudicate the applications, the complaint fails to state a claim under the mandamus statute. 28 U.S.C. § 1361. In addition, the government argues there is no claim under the Administrative Procedures Act.

According to the defendants, the FBI does namechecks on all applications for status changes. Thirty-two percent of the namechecks require additional review by the FBI. Ultimately ten percent are named as possible subjects of an FBI record. These records must be retrieved and reviewed. Some information is electronic, while other information

is in paper records.  About one percent of these ten percent have derogatory information in their files.  The FBI is unable to state specific time periods for finalizing these checks.

>Section 1255(a) states:
>
>Status as a person admitted for permanent residence on application and eligibility for immigrant visa. The status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

8 U.S.C. § 1255(a).  The government argues that these decisions are inherently discretionary and the statute sets no time-limits for making a determination whether to adjust the status of an alien.  Accordingly, the government argues that Congress has divested courts of jurisdiction to consider mandamus actions to adjust the status of aliens. Further argues the government, Congress has stated:

>Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review–
>
>. . . .
>
>(ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B).  *See Ting Hao Yang and Yu Chen Huang v. Gonzales*, No. 4:06CV3290 (D. Neb. June 25, 2007) (Judge Richard Kopf finding that § 1252(a)(2)(ii) divests the court of subject matter jurisdiction as the time it takes to make a decision is

5

completely discretionary); *Suresh Narra and Anurada Narra v. Gonzales*, 2007 WL 1959255 (D. Neb. July 3, 2007) (same). *See, e.g., INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999) ("judicial deference to the executive branch is especially appropriate in the immigration context where officials 'exercise especially sensitive political functions that implicate questions of foreign relations.'") (*quoting INS v. Abudu*, 485 U.S. 94, 110 (1988)); *Haig v. Agee*, 453 U.S. 280, 292 (1981) ("Matters intimately related to foreign policy and national security are rarely proper subjects for judicial intervention.").

The government likewise argues that the same analysis applies to the plaintiffs' argument regarding application of the APA. Because there is no statutory deadline for action, the government contends the plaintiffs cannot proceed against an agency. *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004). In this case, the agency is still waiting for FBI action and cannot make a decision until such action occurs.

The plaintiffs are seeking an order asking this court to require defendants to make a final decision on their applications for adjustment of their status.[1] It appears that nearly two years have elapsed since the FBI received plaintiffs' applications for review. A number of courts have concluded that § 1252(a)(2)(B) only strips the court of jurisdiction to actually review discretionary authority that is particularly specified in the statute. *See Spencer Enterprises, Inc. v. United States*, 345 F.3d 683, 689-90 (9th Cir. 2003); *Khan v. Attorney General*, 448 F.3d 226, 231-33 (3rd Cir. 2006); *Zhao v. Gonzales*, 404 F.3d 295, 303 (5th Cir. 2005). Plaintiffs argue that Congress has not granted the Attorney General the discretion to choose to refuse to make an ultimate decision once an application is filed with

---

[1] Unlike immigration naturalization laws, 8 U.S.C. § 1447(b), which requires adjudication within 120 days after examination, this particular statute and the accompanying regulations provide no time frame for which the applications must be adjudicated.

6

the USCIS. There is no discretion, argues plaintiffs, for the Attorney General to fail to process the applications. The statutes require the Attorney General to administer and enforce the immigration and naturalization statutes, including adjudication of applications for adjustment status. 8 U.S.C. § 1103; 8 U.S.C. § 1255. Further, 8 C.F.R. § 245.2(5)(i) requires that "the applicant shall be notified of the decision of the director and, if the application is denied, the reasons for the denial." "The language of the statute and these regulations is mandatory not discretionary. Thus, regardless of the ultimate decision, INS has a non-discretionary, mandatory duty to act on Plaintiff's applications." *Yu v. Brown*, 36 F. Supp.2d 922, 931 (D.N.M. 1999); *see also Qijaun Li v. Chertoff*, 2007 WL 2123740 (D. Neb. 2007) (Where Judge Lyle Strom finds jurisdiction exists to order completion of adjudication of I-485 application); *Tang v. Chertoff*, 493 F. Supp.2d 148 (D. Mass. 2007) (granting of status not required, but adjudication of the application is legally required); *Li Duan V. Zamberry*, 2007 U.S. Dist. LEXIS 12697, at *9 (W.D. Pa. 2007) (judicial review permitted over inaction of status application, otherwise "such a result would amount to a grant of permission for inaction, and a purposeful disregard of the potential for abuse thereof, on immigration matters."; *Loo v. Ridge,* 2007 WL 813000, *3 (E.D.N.Y. 2007) (same); *Yu v. Chertoff*, 2007 WL 1742850, at *2-3 (N.D.Cal. June 2007) (8 C.F.R. § 245.2(a)(5) implies USCIS has a duty to process I-485 applications to decision); *Sing v. Still*, 470 F. Supp.2d 1064, 1067 (N.D. Cal. 2007) (mandatory duty to act on plaintiff's pending I-485 application); *Huang v. Gonzales*, 2007 U.S. Dist. LEXIS 32276, at *6 (D. Wash. 2007) (finding jurisdiction exists over delayed status of applications); *Soneji v. Dept. of Homeland Sec.*, 2007 WL 3101660 (N.D. Cal. Oct. 22, 2007) (same); *Sawad v. Frazier*,

7

2007 WL 2973833, *4 (D. Minn. Oct. 9, 2007) (same).[2]  The court has carefully reviewed the cases cited by the plaintiffs and the defendants.  The court finds the analysis concluding jurisdiction exists on the basis that the Attorney General must adjudicate these I-485 applications persuasive.  There is a mandatory duty to process these applications.  The discretion argued by the government occurs after a decision has been made, not whether the agency can choose not to make a decision or can choose to unreasonably delay a decision.  The statute requires a decision and this court has jurisdiction to review that inaction.  Accordingly, the court finds it has jurisdiction over this case.

A district court may issue mandamus relief if: (1) the plaintiffs have a clear and indisputable right to the relief requested; (2) the defendant has a nondiscretionary duty to honor that right; and (3) they have no other remedy.  *Castillo v. Ridge*, 445 F.3d 1057, 1060-61 (8th Cir. 2006).  First, the court finds the plaintiffs filed their I-485 applications nearly two years ago.  As the court has herein concluded, the defendants have a nondiscretionary duty to timely process these applications, and such applications have not been fully processed.  Third, there is no other adequate remedy to address the claims of the plaintiffs.  As set forth herein, a number of district courts have determined that mandamus actions and complaints under the APA are acceptable methods for challenging whether a reasonable delay is acceptable under the circumstances of a particular case.[3]

---

[2]There have also been district courts that have concluded no jurisdiction exists as this is a discretionary function.  *See Serrano v. Quarantillo*, 2007 WL 1101434, at *3 (D. N.J. 2007); *Bugulu v. Gonzalez*, 490 F. Supp.2d 965 (W.D. Wis. 2007); and *Tan v. Chertoff*, 2007 WL 1880742, at *4 (E.D. Mo. 2007); *see also Shah v. Hansen*, 2007 WL 3232353 (N.D. Ohio 2007 (finding jurisdiction under the APA but not under the mandamus statute).

[3]In *Tang*, a Massachusetts district court was faced with a similar situation where the plaintiffs' applications for adjustment of status were delayed due to a pending security check.  493 F. Supp.2d at 148. Under the particular facts and circumstances presented, the court held the government's four-year delay on the employment-based application due to a pending security check was unreasonable.  *Id.* at. 150.  *See also Galvez v. Howerton*, 503 F. Supp. 35, 39 (C.D. Cal. 1980) (holding a six-month delay unreasonable);

Further, there is no evidence that plaintiffs' namecheck should take three times the average, no evidence that this is a problem case, and no evidence that there is any investigation of the plaintiffs. Accordingly, the court finds it has jurisdiction both under the mandamus statute and under the APA.

THEREFORE, IT IS ORDERED:

1. Defendants' motion to dismiss, Filing No. 10, is denied.

2. Defendants shall provide to the court and plaintiffs within sixty days evidence specific to plaintiffs' applications showing that the delay in processing their namechecks and adjudicating their applications is reasonable.

3. Defendants shall, within fifteen days after providing the court and plaintiffs with the evidence described in the preceding paragraph, move for summary judgment on the reasonableness issue, and the parties shall submit briefs in support of and in opposition to the motion for summary judgment.

DATED this 18th day of December, 2007.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge

---

*Paunescu v. INS*, 76 F. Supp. 2d 896, 901-02 (N.D. Ill. 1999) (holding a ten-month delay unreasonable); *Yu*, 36 F. Supp. 2d at 932 (holding a two-and-one-half-year delay unreasonable); *Agbemaple v. INS, 1998 WL 292441* (holding a twenty-month delay unreasonable); *Hu v. Reno*, 2000 WL 425174, * 4 (N.D. Texas 2000) (holding a two-and-one-half-year delay unreasonable); *Salehian v. Novak*, 2006 WL 3041109 (D. Conn. 2006) (holding a two-year delay unreasonable).